UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONYA WILLIAMS<br>342 37th Street SE, Apt. 204<br>Washington, D.C. 20019<br><br>J.W., a minor, by and through her mother<br>Donya Williams<br>342 37th Street SE, Apt. 204<br>Washington, D.C. 20019,<br><br>      Plaintiffs,<br> v.<br><br>UNITED STATES OF AMERICA<br>950 Pennsylvania Avenue NW<br>Washington, D.C. 20530<br><br>JOHN DOE U.S. MARSHALS 1-6, *in their individual capacities*<br>c/o Office of General Counsel<br>U.S. Marshals Service<br>Building CS-4, Suite 1000<br>Washington, D.C. 20530-1000,<br><br>      Defendants. | No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES**
(Unreasonable Search and Seizure; Destruction of Property)

**INTRODUCTION**

1. This is a civil rights action raising constitutional claims under the Fourth Amendment against federal officials pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, for their unlawful actions during the course of evicting Plaintiffs Donya Williams and J.W. from their home.

1

2. On June 19, 2015, Ms. Williams and her daughter J.W. were traumatized and humiliated when John Doe U.S. Marshals 1-6 ("Defendant Marshals") came to evict them and treated them as if conducting a raid on a violent criminal enterprise.

3. Defendant Marshals entered the Williams home shouting and with their guns drawn, terrorizing J.W., then twelve years old. Two of the Defendant Marshals burst in on Ms. Williams in her bedroom even though she informed them she was naked. Ms. Williams and J.W. were then forced out of their home, with Ms. Williams wearing ripped clothing that exposed her private parts, and J.W. wearing short pajama bottoms that she would not have otherwise worn in public. While Defendant Marshals allowed J.W. to re-enter her apartment and change, they refused to allow Ms. Williams to change into clothing that would adequately cover herself and protect her privacy. Defendant Marshals mocked Ms. Williams for being subject to eviction and for having medical conditions, and then paraded Ms. Williams, still improperly clothed, and J.W. past an eviction crew of approximately twenty men and the staff in the administrative office of their apartment building out into a parking lot where they were visible to all passersby.

4. When Ms. Williams and J.W. examined their belongings that had been dumped beside them outside their building, they discovered that several valuable items were missing and that two bags of clothes had been ruined by opening a sealed bottle of bleach into the bags.

5. The Fourth Amendment to the United States Constitution constrains law enforcement's actions by protecting citizens from unreasonable searches and seizures, and Defendant Marshals' actions were clearly unreasonable. Defendant Marshals' actions also constitute several torts for which the United States is liable pursuant to the Federal Tort Claims Act.

Being evicted is painful enough without being needlessly degraded by government officers. Plaintiffs now seek damages for these violations of their rights.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Fourth Amendment to the United States Constitution and the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346 & 2671-80. The FTCA also confers jurisdiction. 28 U.S.C. § 1346(b)(1).

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim all transpired in the District of Columbia, and pursuant to 28 U.S.C. § 1346(b)(1) because this is a civil action against the United States for loss of property and personal injury arising out of conduct of a United States employee.

## PARTIES

8. Plaintiff Donya Williams is an adult resident of the District of Columbia. On June 19, 2015, she was evicted from her home in Southeast D.C. by Defendant Marshals.

9. Plaintiff J.W. is the minor daughter of Ms. Williams. On June 19, 2015, when she was twelve years old, she was evicted from her home in Southeast D.C. by Defendant Marshals.

10. Defendants John Doe U.S. Marshals 1-6 are sworn officers who are employed by the United States Marshals Service and whose real names are unknown at this time. At the time of the events at issue, all Defendant Marshals were acting within the scope of their employment and under color of law of the United States. They are sued in their individual capacities.

11. Defendant United States of America is the governing entity that operates and oversees the United States Marshals Service. In this case, the United States acted through its agents, Defendants John Doe U.S. Marshals 1-6.

## FACTS

12. On June 19, 2015, Defendant Marshals arrived at Ms. Williams' home at 2657 Stanton Road Southeast, Apt. 108, Washington D.C. 20020, to oversee the eviction of Ms. Williams and her daughter. All the Marshals were male.

13. Ms. Williams, her minor daughter J.W., and Ms. Williams' friend James Harvey were in the apartment when Defendant Marshals arrived.

14. At the time of the eviction, there were no outstanding search or arrest warrants for Ms. Williams' home or any of its occupants.

15. Around 9:30 a.m., Ms. Williams, J.W., and Mr. Harvey were startled by a loud pounding on the apartment door.

16. Wearing only pants, Mr. Harvey opened the door. Defendant Marshals burst into the apartment, shouting at the occupants.

17. Defendant Marshals had their guns drawn and pointed them at Mr. Harvey. When J.W. saw Defendant Marshals' guns pointed at Mr. Harvey, she screamed. J.W. was wearing a tank top and short pajama shorts, which were not clothes she would wear in public.

18. Defendant Marshals took Mr. Harvey and J.W. into the hallway of the apartment building. An eviction crew of approximately twenty men was waiting to remove Ms. Williams' and J.W.'s belongings. J.W. was still wearing a tank top and short pajama shorts.

19. During this time, Ms. Williams was in her bedroom wearing a nightgown. When she heard the commotion, she quickly took off her nightgown so she could get dressed.

20. Defendant Marshals moved towards Ms. Williams' bedroom and called for her to come out. Ms. Williams responded that she was getting dressed and had no clothes on. Nonetheless, two Defendant Marshals entered Ms. Williams' bedroom and found Ms. Williams completely naked.

21. Ms. Williams begged the Defendant Marshals to allow her to get dressed, but they refused. Instead, Defendant Marshals demanded that she immediately leave the bedroom.

22. Ms. Williams grabbed whatever clothes she could reach and tried to put them on as the Defendant Marshals rushed her out of the bedroom.

23. In her attempt to grab clothing quickly, Ms. Williams inadvertently picked up a pair of pants belonging to her daughter. Defendant Marshals did not allow Ms. Williams time to grab underwear. When Ms. Williams attempted to put the pants on, they split at the crotch and exposed her private parts.

24. Defendant Marshals dragged Ms. Williams into the hallway where the eviction crew was standing. They stared at Ms. Williams, who at this time had neither bra nor underwear and was dressed in pants with a hole that exposed her private parts.

25. Seeing Ms. Williams in this state, the eviction crew and other Defendant Marshals stared at Ms. Williams.

26. Ms. Williams asked Defendant Marshals why they were treating her in this manner. One of the Defendant Marshals responded, "I pay my bills and you should too."

27. Ms. Williams takes several different medications for different health issues. Defendant Marshals did not allow Ms. Williams to reenter the apartment to get her prescription

medicine from the table next to her bed. Instead, one of the Defendant Marshals retrieved her medications for her. While doing so, he loudly remarked on how many prescriptions there were—which caused members of the eviction crew to laugh—and shoved the medicine into Ms. Williams' chest.

28. Defendant Marshals pushed Ms. Williams, J.W., and Mr. Harvey past members of the eviction crew and out of the apartment. Ms. Williams still had not been permitted to properly dress.

29. Defendant Marshals eventually permitted J.W. to reenter the apartment and change. Defendant Marshals also allowed Mr. Harvey to reenter the apartment to put on a shirt. However, Defendant Marshals refused to allow Ms. Williams to change or put on additional clothing. As a result, her private parts remained exposed.

30. Defendant Marshals forced Ms. Williams, J.W., and Mr. Harvey to walk past the apartment building's management office and out to the parking lot; workers from the office came outside to watch and laugh.

31. The trauma of this frightening and humiliating ordeal terrified J.W., who was screaming and crying at what was happening to her and her mother. Before that day, Ms. Williams had never seen J.W. cry like she did that day, nor has Ms. Williams seen her cry like that since.

32. When Ms. Williams, J.W., and Mr. Harvey arrived at the parking lot, they had to stand and watch as the eviction crew removed their belongings and placed them on the sidewalk. Ms. Williams remained indecently exposed during this process. At least half a dozen people, including neighbors and passersby, observed them standing in the parking lot.

33. Defendant Marshals then instructed Ms. Williams, J.W., and Mr. Harvey that they could no longer be on the property and had to leave.

34. Ms. Williams, J.W., and Mr. Harvey got into Ms. Williams' car and drove around the building to where the eviction crew had piled Ms. Williams' belongings.

35. After Defendant Marshals and the eviction crew left, Mr. Harvey rented a U-Haul to transport Ms. Williams' belongings to a storage facility.

36. While loading and unloading the U-Haul, Ms. Williams discovered that she was missing multiple pieces of property. Her twenty-four inch Proscan LED TV, purchased in December 2014 from H.H. Gregg for approximately $250, was missing. Ms. Williams' Surface 7 tablet with a detachable keyboard, along with a leather case, was also missing. She had purchased the tablet from Best Buy and the leather case from Amazon in December 2013 for approximately $800 total. Ms. Williams' Sony wireless headphones, purchased in January 2015 for approximately $119, were also missing. Finally, Ms. Williams noticed that a set of 10-carat gold hoop earrings purchased from a store in Aurora, Colorado, for approximately $300 in 2004 were also missing.

37. While loading and unloading the U-Haul, Ms. Williams noticed that two garbage bags full of various clothing items were damaged. Each bag contained approximately thirty clothing items (including tops, sweaters, and pants). A new and previously unopened bottle of bleach had been emptied into the bags, destroying the clothes inside. One of the bags still contained the empty bottle of bleach. As a result, Ms. Williams had to throw away the clothes. Ms. Williams estimates that the value of the clothes was $1,000.

38. The experience of being subjected to the type of home raid normally associated with violent criminal enterprises was degrading, frightening, and traumatizing to Ms. Williams

7

and J.W. During the eviction, J.W. was more frightened than she has ever been. She was screaming and crying. Ms. Williams and J.W. feared for their lives during the eviction.

39. Now fifteen years old, J.W. continues to speak about the eviction regularly and is seeing a therapist to help her cope with the experience. After receiving help from a therapist and after more than a year since the eviction, J.W. still suffers from the event. She continues to revisit the fear she had for her own and her mother's lives on the day of the eviction. As a result of the eviction, J.W. and her mother no longer trust law enforcement.

40. Ms. Williams also sought therapy to aid in processing the traumatic eviction. Ms. Williams and J.W. plan to continue therapy and attend joint therapy sessions to cope with the trauma.

41. On February 21, 2017, Ms. Williams submitted a Standard Form 95 to the U.S. Marshals Service seeking compensation for the incident. She sought $2,469.00 for property damage and $40,000.00 for personal injury, for a claim totaling $42,469.00.

42. The U.S. Marshals have not responded to Ms. Williams' claim. Because the U.S. Marshals have exceeded their six-month window in which to make a final determination regarding Ms. Williams' claim, 28 U.S.C. § 2675(a), Ms. Williams is now before this Court seeking damages for personal injury and damaged property suffered at the hands of Defendant Marshals.

### CLAIMS FOR RELIEF

**Claim I: Violation of Fourth Amendment Rights /** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics***, 403 U.S. 388 (1971)**
**(against Defendant Marshals)**

43. Plaintiffs have a constitutionally protected right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures by

government officers, including intrusions into their home carried out in an unreasonable manner.

44. The actions of Defendant Marshals, including the manner in which they entered the Williams' home, bursting in on Ms. Williams naked, forcing Plaintiffs out of their home while indecently exposed, and marching them past dozens of onlookers in that state, violated Ms. Williams' and J.W.'s rights under the Fourth Amendment to the United States Constitution.

**Claim II: Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80, based on intentional infliction of emotional distress
(against Defendant United States)**

45. Defendant Marshals' actions, described above, constitute intentional infliction of emotional distress under the law of the District of Columbia.

46. By conducting an eviction of Ms. Williams and J.W. in an overly aggressive and frightening manner despite the absence of any reasonable fear of danger, bursting in on Ms. Williams despite her protestations that she was naked, forcing Ms. Williams and J.W. out of their home improperly clothed, refusing to permit Ms. Williams to return to her apartment to dress properly, mocking Ms. Williams and J.W., and subsequently forcing Ms. Williams to walk past dozens of other individuals and then into an openly visible parking lot while in an exposed state, Defendant Marshals engaged in extreme and outrageous intentional behavior. As a result of their actions, Ms. Williams and J.W. experienced severe emotional distress.

47. If the United States were a private person, it would be liable to Ms. Williams and J.W. under the law of the District of Columbia for intentional infliction of emotional distress.

48. Under the FTCA, the United States is liable for actions taken by its employees acting under color of their employment with the United States. Because Defendant Marshals acted within the scope of their employment as law enforcement officers of the federal government, the United States is liable for Plaintiffs' personal injury resulting from Defendant Marshals' actions.

**Claim III: Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80, based on conversion of chattel**
**(against Defendant United States)**

49. Defendant Marshals' actions, described above, constitute conversion of chattel under the law of the District of Columbia.

50. After the eviction, Ms. Williams noticed that some her property, as described in paragraph 36, was missing. This property was in Ms. Williams' apartment before Defendant Marshals evicted her and her daughter from their home, but was no longer present after the eviction was carried out.

51. If the United States were a private person, it would be liable to Ms. Williams and J.W. for conversion of chattel.

52. Under the FTCA, the United States is liable for actions taken by its employees acting under color of their employment with the United States. Because Defendant Marshals acted within the scope of their employment as law enforcement officers of the federal government, the United States is liable for the taking of Plaintiffs' property resulting from Defendant Marshals' actions.

**Claim IV: Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80, based on trespass to chattel**
**(against Defendant United States)**

53. Defendant Marshals' actions, described above, constitute trespass to chattel under the law of the District of Columbia.

54. After Defendant Marshals evicted Ms. Williams and J.W. from their home, Ms. Williams opened two bags of previously undamaged, wearable clothing to discover that a previously unopened bottle of bleach had been poured over the bags' contents, rendering the clothing items unwearable. Because Defendant Marshals' conduct resulted in these clothing items being irreparably damaged, Ms. Williams had to throw the clothing away.

55. If the United States were a private person, it would be liable to Ms. Williams and J.W. for trespassing on their chattel because two bags of Ms. Williams' clothes were damaged during the eviction.

56. Under the FTCA, the United States is liable for actions taken by its employees acting under color of their employment with the United States. Because Defendant Marshals acted within the scope of their employment as law enforcement officers of the federal government, the United States is liable for the property damage resulting from Defendant Marshals' actions.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

a) RULE that the actions of Defendant Marshals violated Ms. Williams' and J.W.'s rights under the Fourth Amendment to the United States Constitution and constituted intentional infliction of emotional distress, conversion of chattel, and trespass to chattel for which the United States is liable under the Federal Tort Claims Act;

b) ENTER JUDGMENT awarding Ms. Williams and J.W. compensatory damages in the amount of $42,469.00 against the United States;

c)  ENTER JUDGMENT awarding Ms. Williams and J.W. compensatory and punitive damages against the Defendant Marshals in their personal capacities in an amount commensurate with the proof adduced at trial; and

d)  GRANT Ms. Williams and J.W. such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

*/s/ Scott Michelman*
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Shana Knizhnik (D.C. Bar No. 1020840)
American Civil Liberties Union Foundation
    of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
Tel. 202-457-0800
Fax 202-457-0805
smichelman@acludc.org

January 30, 2018                Counsel for Plaintiff*

---

* Counsel acknowledge the assistance of Beck Zucker, a George Washington University law student, in the preparation of this complaint.